On rehearing,
Burton, J.,
delivered the opinion of the court.
Pooley, Barnum & Co. sued Edwin Whitmore & Co. on two promissory notes of §185 each, made by W. A. Whitmore, payble at six and nine months respectively, to the order of “ Whitmore Bros.,” and endorsed in that name. Whitmore Bros., a firm composed of Edwin Whitmore and the said W. A. Whit-more were partners in publishing the “Public Ledger” newspaper in the city of Memphis, and also conducted a general job printing office in that city. The notes in suit, however, were drawn and endorsed by W. A: Whitmore in discharge of a private debt that he owed to one Cannon. Edwin Whitmore is the surviving partner of the firm and puts in a special plea of non est factum, and insists that the firm is not bound to pay, on the ground that it is not a partnership debt. Defendants in error reply that they are bona fide purchasers, for value, of the note in *634 due course of trade, and therefore are entitled to recover, notwithstanding the wrong or fraud of W. A. Whitmore in using the partnership name in a personal transaction.
The court below instructed the jury that “as a general rule, one partner is not liable for the: act of another partner not within the scope of the partnership business. That if one partner sign a promissory note or other negotiable paper in the firm name, without the knowledge or consent of the other partner, and for a matter not within the scope of the partnership business, the other partner will not be liable unless he ratify the act or unless the paper gets into the hands of some purchaser before maturity, who had no knowledge or notice of the consideration between the original parties, and who paid a valuable consideration for the paper. That such a person would be an innocent holder for value, and without notice.”
The above instructions are not accurate without important qualifications, and were certainly calculated, as we think, to mislead the jury, in view of the facts of this case.
Every member of an ordinary partnership is its general agent for the transaction of its business in the ordinary way, and the firm is held' responsible for whatever is done by any of its partners when acting for the firm, within the limits of the authority conferred by the nature of the business it carries on. Every person is entitled to assume that each partner is empowered to do for the firm whatever is necessary *635 for the transaction of its business, in the way in which , that business is ordinarily carried on by other people. But no person is entitled to assume that any partner has a more extensive authority -than that above described. It will be observed that what is necessary to carry on the partnership business in the ordinary way, is made the test of an authority when no actual authority or ratification can be_ proved. This is conformable to the most recent and carefully considered decisions, but by adopting it, the liability of a firm for the acts of its co-partners is not so extensive as now, lawyers sometimes imagine.
The question whether a given act can or cannot be necessary to the transaction of the business in the way in which it is usually carried on, must evidently be determined by the nature of the business, and by the practice of persons engaged in it. Evidence on both of these points is necessarily admissible, and as readily may be conceived, an act which is necessary for the prosecution of one kind of business may be wholly unnecessary for the carrying on of another in the ordinary way, consequently no answer of any value can be given to the abstract question: can one partner bind his firm by such an act? unless having regard to what is usual in business, it can be predicated of the act in question, either that it is one without which no business can be carried on, or that it is one which is not necessary for carrying on any business whatever. There are obviously very few acts of which such an affirmation can be truly made. The great majority of acts which give rise to *636 doubt are those which are necessary in one business, and not in another. Take for example, negotiable instruments. It may be necessary for one member of a firm of bankers to draw, accept or endorse a bill of exchange on behalf of the firm, and to require that each member should put his name to it would be ridiculous; but it by no means follows, nor is it in fact true, that there is any necessity for one of several solicitors to possess a similar power, for it is no part of the ordinary business of a solicitor to draw, accept or endorse bills of exchange. The question, therefore, can one partner bind the firm by accepting bills in its name, admits of no general answer. The nature of the business and the practice of those who carry it on, (usage or custom of the trade) must be known before any answer can be given. Lindley on Partnership, 198-9-10. It is further said by the same author, “It is clearly settled that any member of an ordinary trading partnership, can bind the firm by drawing, accepting or endorsing bills of exchange, or by making and endorsing promissory notes in its name. But with respect to partnerships which are not trading partnerships, the question, whether one partner has any implied authority to bind his co-partners by putting the name of the firm to a negotiable instrument, depends upon whether the business of the partnership is such that dealings in negotiable instruments are necessary for its transaction, or are usual in partnerships of the same description. In the absence of evidence showing necessity or usage, the power has been denied to mu* of several mining ad *637 ventures, quarry workers, farmers and solióitors.” lb. 213-14.
The foregoing principles, as we think, have been fully recognized by this court in Crosthwaite v. Ross, 1 Hum., 23, where the distinction between partners in trade and partners in occupation or employment is taken, and the power of the former class to bind the firm by drawing or endorsing notes and bills, is sustained, while it is denied to the latter class. It is there held that one partner in the practice of physic could not bind the firm, by drawing a bill or making a note on which to raise money, because it was not within the scope of their partnership and it was distinctly holden that the. power to raise money was not one of the implied powers resulting from such an association. By recurring to the instructions given by the court below in this case, it will be seen that this important distinction between strictly commercial or trading partnerships, and partnerships in occupation is entirely ignored, and we think it was the duty of the court to point out the distinction, for ■prima faaie it cannot be said that one partner in a printing office would have the implied power to bind the firm, by drawing or endorsing a note. In this case, to be sure, there vms some evidence of the ■usage of this firm to deal in commercial paper, but there was also evidence tending to the contrary conclusion. The consequence of this distinction between trading and non-trading partnerships is very important in reference to the main defence to be relied •upon in this case. If a partner in a banking firm, *638 for instance, should endorse a bill or note for his private debt, and it should get into the hands of a bona fide holder without notice, his firm would be bound by it. The endorsing or making such paper, being the usual mode of conducting that business, the public have a right to suppose that each partner is empowered to accept or endorse for- the firm, and are' not bound to inquire whether in a given instance the-act was done with the assent of his co-partners. But not so with a partnership in occupation merely, whose business does not ordinarily require dealing in commercial paper. One who becomes a member of such a firm, does not confer implied power on his co-partners to bind him by dealing in bills or notes. He is not clothed with apparent power so to bind his firm, and no person dealing with the firm has' the right to suppose that the powers of one member are more extensive than is implied by the ordinary mode of conducting such business. If two persons are associated in the practice of law, and one of them, without or against the consent of the other should endorse a note or bill for his private purpose, no one buying such bill could succeed on the plea that he was a bona fide holder without notice. For the reason that by forming such an association the several partners do not hold each other out to the world as empowered to use their names as makers or endorsers of negotiable paper.
3. The rules, in regard to notice to a purchaser, are very accurately laid down in our own cases, digested in Heiskell, and contain a much more *639 accurate statement of the law upon the subject, than is contained in this charge, and one much more applicable to the facts of the case.
Our conclusion is, that the charge of the court in reference to the facts of this case, if it does not amount to a positive misstatement of the law, was calculated to mislead the jury, and that the appellant is entitled to a new trial, although he failed to ask further instructions to the jury. .
On hearing this cause at a former term, the court decided to grant a new trial, and it is now before us on application, to reconsider the conclusion at which the court then arrived.
On a reconsideration of the case, we adhere to our former opinion, and reverse the judgment of the Municipal Court, and remand the cause for a new trial.in. accordance with the principles herein announced.